UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>EVAN FREDERICK LIGHT,<br><br>Defendant. | 4:23-CR-40057-RAL<br><br><br>BRIEF IN SUPPORT OF GEMINI TRUST COMPANY, LLC'S CLAIM FOR RESTITUTION |

**GEMINI TRUST COMPANY, LLC'S POSITION ON RESTITUTION**

Gemini Trust Company, LLC ("Gemini") respectfully seeks restitution for losses that defendant Evan Light ("Defendant") caused Gemini through his theft of cryptocurrency. Defendant's criminal conduct required Gemini to, among other things, conduct forensic investigations and pay settlements to its account holders who were harmed by Defendant's crimes. The effects of Defendant's crimes on Gemini are addressed below and summarized in the Declaration of Katharine Thomas (the "Declaration"), Exhibit A.[1]

**INTRODUCTION**

In evaluating the restitution that Defendant owes, this Court has identified two tiers of claimants who may receive restitution. Tier 1 includes the individual victims, and Tier 2 includes Gemini and IRA Financial Trust Company ("IRAF"), which provided compensation to victims in Tier 1. This Court has ordered that Tier 1 victims receive priority under 18 U.S.C. § 3664(j) and is

---

[1] The Government has already filed this Declaration, along with Exhibits 1-10 and A - E, with this Court on June 13, 2025.  The filing was made under seal.

1

seeking to develop further what the appropriate payments should be to Gemini and IRAF. Doc. 120-2 ("ORDERED that the determination of the amount of restitution owed to Tier 2 victims is left open at this time).

With respect to Tier 1 victims, the Government correctly takes the position that the value of the stolen crypto should be valued as *the greater of* (i) its value on the date of the attack—February 8, 2022; or (ii) its value on the date of sentencing—February 6, 2025, pursuant to the Mandatory Victims Restitution Act ("MVRA"). *See* Doc. 120-1 at 3-4 (citing 18 U.S.C. § 3663A(b)(1)). The value of Bitcoin on the date of the sentencing ($99,135.08) was greater than its value on the date of the attack ($44,118.45). Conversely, the value of Ethereum on the date of the attack ($3,122.61) was greater than its value on the date of the sentencing ($2,855.43). Accordingly, the valuation of the restitution amounts due to Tier 1 victims was made using the greater values of Bitcoin and Ethereum. Doc. 120-1 at 3-5.

With respect to Tier 2 victims, including Gemini, the Government took a different position. Gemini's losses stemmed from the settlement payments it made to Tier 1 victims during 2023-2024. Many of these payments were made with Bitcoin and Ethereum. The Government proposes to ascertain the value of these payments based on the specific date of payment. Doc. 120-1 at 5. In support, the Government cites 18 U.S.C. § 3664(j). This statute addresses compensation to the victims "from insurance or any other source" and instructs the Court to reduce any amount due to a victim under an order of restitution by any amount recovered by the victim in any civil proceeding. *Id*. The statute does not authorize the Court to value the restitution amounts due to Tier 2 victims in a way that is different from the valuation used for Tier 1 victims.

Accordingly, Gemini respectfully objects to the valuation proposed by the Government and sets forth its position in more detail below.

### 1. The restitution amounts payable to Gemini under 18 U.S.C. § 3664(j)(1) should be calculated according to the statute.

Many of the Tier 1 victims sued Gemini in civil arbitration proceedings because of the Defendant's Feb. 8, 2022 theft of crypto assets. Gemini settled those arbitrations with the Tier 1 victims not because Gemini had done anything wrong, but to avoid the risk and expense of further litigation. Under 18 U.S.C. § 3664(j)(1), "If a victim has received compensation from insurance or any other source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation." Accordingly, Gemini now seeks restitution for what it has paid to the Tier 1 victims via these settlements.

Section 3664(j)(1) is "a statutory version of the collateral-source doctrine," which does not reduce the total amount of the restitution award owed by a defendant but merely provides that "the wrongdoer must reimburse the source of those benefits." *United States v. Johnson*, 911 F.3d 849, 852 (7th Cir. 2018). Thus, under § 3664(j)(1) a third-party payor will "step into the victims' shoes as a subrogee of their restitution claims against" the defendant. *United States v. Bright*, 353 F.3d 1114, 1122 (9th Cir. 2004).

During the settlement of these proceedings, Gemini gave the Tier 1 victims a choice to have the settlement proceeds paid to them in USD or in crypto (i.e., BTC or ETH). To resolve the arbitrations filed by IRAF customers against Gemini, Gemini made settlement payments to them for a total of $1,950,650.02; 126 BTC; and 667.7 ETH. Decl. ¶¶ 15-16, Ex. B (line items 16-17), Ex. 10.

For the Tier 1 victims who chose settlements paid in USD, the calculation is straightforward: Gemini should receive, in restitution, the same amount of USD it paid to the Tier 1 victims in settlement. In this scenario, the valuation of Gemini's payments is identical to the valuation for the victim. For the Tier 1 victims who received settlement from Gemini in crypto,

3

the Court must select a date for valuing the cryptocurrency that Gemini paid to the Tier 1 victims in the settlement. In this scenario, the value of the settlement consideration—and the amount payable to Gemini in the restitution order—should be calculated in the same way as it would be for the Tier 1 victims. That is, all BTC should be valued as of Feb. 6, 2025 (the date of sentencing) and all ETH should be valued as of Feb. 8, 2022 (the date of the loss).

For example, if a Tier 1 victim lost 3.0 BTC during Defendant's cyber-intrusion and Gemini paid that victim 1.5 BTC during settlement, the total amount of restitution Defendant should owe to the victim in USD should be $297,405.24 (3.0 x $99,135.08), with $148,702.62 (1.5 x $99,135.08) of that sum ordered to be paid to the Tier 1 victim and the remainder $148,702.62 payable directly to Gemini.

The method just described for valuing Gemini's crypto settlement payments to Tier 1 victims is both appropriate and permissible for this case. Courts have broad discretion in determining the value of property for restitution. *See, e,g., United States v. Statman*, 604 F.3d 529, 538 (8th Cir. 2010) ("The MVRA does not provide a specific methodology to employ when valuing property… Rather, the law appears to contemplate the exercise of discretion by sentencing courts in determining the measure of value appropriate to restitution calculation in a given case.") Here, market value serves as the best measure, and under § 3663A(b)(1), the market value of the ETH should be determined at the date of the theft and the market value of the BTC should be determined at date of the sentencing. *See, e.g., United States v. Miller*, 41 F.4th 1019, 1026 (8th Cir. 2022) ("[I]n most circumstances, fair market value will be the measure most apt to serve th[e] statutory purpose of compensating the victim's actual losses.") (citation omitted).

The method proposed above best serves the statutory purpose of compensating the victim's actual losses, avoids any double recovery to the Tier 1 victims, and does not deprive Gemini of

compensation for the payments that it made to the Tier 1 victims. Three reasons show why the method described above makes the most sense.

*First,* this method of valuation is consistent with the notion that Gemini (as a third-party payor) effectively steps into the shoes of the Tier 1 victim for purposes of restitution. That is, since Gemini's rights to restitution flow from the Tier 1 victim's rights, the crypto should be valued just as it would be for the source of those rights, namely the Tier 1 victim.

*Second,* any effort to determine market value at the date of the settlement payments would be difficult to square with the statutory language in § 3663A(b)(1) that requires a court to look at either the date of the loss or the date of the sentencing. The statute does not provide for a third option, such as the date of a settlement.

*Third*, Gemini's proposed approach for taking the settlements into account is the simplest and most efficient method of valuation. Attempting to value the crypto on the date each settlement agreement was executed (or the date the settlement consideration was received) will implicate many different dates and further require assessment of crypto market values on each of those dates. The far more rational and economical solution is to value all of the involved crypto the same way.

Section 3663A(b)(1) provides a framework which ensures that criminal defendants do not benefit from fluctuations in the market value of goods that they steal. If a stolen good was worth more at the time of the theft than the time of the sentencing, the defendant bears that loss, and the value at the time of the theft is used. If the good is worth more at the time of the sentencing, the victim receives that benefit of increased value rather than the defendant. Gemini's proposed approach likewise confers no benefit from changing market values on a defendant, and it also does not deprive a victim of the benefit of § 3663A(b)(1)'s valuation. Rather, as to the compensation that the victim received from Gemini, Gemini simply steps into the shoes of the victim.

In sum, for purposes of apportioning restitution proceeds between Gemini and the Tier 1 users who have settled, the BTC and ETH that Gemini paid out during settlements with the Tier 1 victims should also be valued in the manner expressly provided for by 18 U.S.C. § 3663A(b)(1): ETH values should be calculated as of Feb. 8, 2022 and BTC values should be calculated as of Feb. 6, 2025.

**2. Gemini should be entitled to recover its fees and costs associated with understanding, diagnosing, and mitigating the Defendant's intrusion of Gemini's online cryptocurrency exchange.**

Gemini also seeks and should be entitled to restitution beyond the sums it paid to Tier 1 victims in settlement, including but not limited to the expenses it incurred in investigating and remediating in the wake of Defendant's cyber-intrusion. As noted above, this case concerns "an offense resulting in damage to or loss of property" under 18 U.S.C. § 3663A(b)(1), which is part of the MVRA. However, the loss of crypto belonging to the Tier 1 victims was not the only "damage to or loss of property" caused by Defendant in the commission of his crimes. Gemini, the owner of an online platform targeted in the theft, has suffered this type of damage as well.

Notably, "[r]estitution under § 3663A(b)(1)(B) is not limited to damage done to a victim's tangible property; it also includes damage to intangible property." *United States v. Zhou*, 717 F.3d 1139, 1155 (10th Cir. 2013) (holding that damage to property included damage to victim's intangible property, such as trademarks, reputation, and goodwill, by defendant's counterfeiting activities, and collecting cases). Likewise, victims may be compensated for "the cost of cleanup or repair of the damaged property because such costs can serve as an 'easily ascertained proxy for the loss sustained by the [victim] as a result of [the defendant's] crimes.'" *United States v. Piggie*, 303 F.3d 923, 928 (8th Cir. 2002) (quotation omitted); *accord United States v. Brock–Davis*, 504 F.3d 991 (9th Cir. 2007) (same); *United States v. Quillen*, 335 F.3d 219, 226 (3d Cir. 2003) (same).

Consistent with this authority, the Eighth Circuit has expressly recognized that the owner of a website attacked during a cyber-intrusion can recover, as restitution, "expenses that victims incurred for mitigation services and infrastructure modifications" following a cyber-attack because they "effectively equate to repair or cleanup costs." *United States v. Gammell*, 932 F.3d 1175, 1181 (8th Cir. 2019). Further, because such restitution is authorized by § 3663A(b)(1)(B), the case of *Lagos v. United States,* 584 U.S. 577 (2018)—a U.S. Supreme Court decision which limited the types of expenses recoverable under a different section of the MVRA—is inapplicable. *Id.*

Similarly, in *United States v. Zarokian*, a court found that the owner of a website involved in a cyber-intrusion could recover, in restitution, the expenses it had paid to third parties—including a computer forensics company and multiple law firms—for services related to investigating and remediating the intrusion, because such expenses were necessary to mitigate and remediate the damage caused by the defendant's crime. No. CR1801626001, 2020 WL 4201241, at *2 (D. Ariz. July 22, 2020).

In this case, the Defendant attacked Gemini's web-based cryptocurrency exchange. As a result of this crime, Gemini suffered damages, as detailed in the enclosed Declaration. To return to its original state of doing-business-as-usual, Gemini had to identify the source, extent, and probable cause of the intrusion, develop mitigation solutions, and undertake technical responses such as freezing accounts and attempting to track the stolen crypto, all at its own expense.

Gemini also retained third-party cybersecurity companies Mandiant and Atredis to investigate the intrusion and conduct penetration testing (i.e., a simulated attack to identify vulnerabilities in the company's security system) as a result of the attack. Gemini spent $282,963.29 in the process. Decl. ¶¶ 10-12, Exs. A, B (line items 5-6), Ex. 1. These expenses, like those at issue in *Zarokian* and *Gammell,* represent the "clean up" costs of returning Gemini's

7

property—its online cryptocurrency exchange platform—to the condition it would have been, absent the Defendant's unlawful activities. Accordingly, these expenses are recoverable under the Eighth Circuit precedent and should be included in any restitution award.

### 3. Gemini should also receive restitution for the fees and costs it incurred aiding the Government in this matter.

To the extent not already encompassed by the arguments above, Gemini should also receive restitution for the fees and costs it incurred "during participation in the investigation or prosecution of the offense," as expressly provided for in Section 3663A(b)(4) of the MVRA.

Gemini has fully cooperated with the Government's investigation, which commenced shortly after the attack on Feb. 8, 2022. For example, several Gemini employees (including its in-house counsel) spent work time communicating with the FBI, which time came at the expense of performing their regular duties for Gemini. Gemini also instructed its vendor, Chainalysis, to provide critical information to the FBI that may have contributed to Defendant's capture, which information was gathered, analyzed, and supplied by the vendor at Gemini's expense. Gemini has also shared a comprehensive investigation report of the attack by Mandiant.

Even now, as the criminal action is being prosecuted, Gemini has been fully cooperative, investigating thousands of transactions by Defendant as he moved the stolen funds between different victims' accounts on Gemini platform and then withdrew them; and providing a comprehensive list of the Tier 1 victims' losses (as reflected in Gemini's systems) so that restitution amounts could be accurately calculated. Gemini has incurred fees and costs in the amount of $83,816 during its participation in the investigation or prosecution of the offense for which it should be duly compensated. Decl. ¶¶ 20-21, Ex. B (line item 31), Ex. 9.

Dated June 13, 2025

Respectfully Submitted,

/s/ *Meredith A. Moore*
Cutler Law Firm, LLP
Meredith A. Moore, Local Counsel
140 N. Phillips Ave., 4th Floor
PO Box 1400
Sioux Falls, SD 57101-1400
Phone: 605-335-4995
Email: meredithm@cutlerlawfirm.com

BAUGHMAN KROUP BOSSE PLLC

Maryia Jones (admitted *pro hac* vice)
One Liberty Plaza – 46th Floor
New York, NY 10006
Phone: (212) 548-3212
Email: mjones@bkbfirm.com